# CV 07 3871 ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MICHAEL FONTE,

                              Plaintiff,            (S.F.)

                 -against-

NASSAU COUNTY, THE NASSAU COUNTY
DISTRICT ATTORNEY'S OFFICE, THE
NASSAU COUNTY POLICE DEPARTMENT,
ASSISTANT DISTRICT ATTORNEY DAVID
HABER, ASSISTANT DISTRICT ATTORNEY
LUIGI VIGLIOTTI, ASSISTANT DISTRICT
ATTORNEY DANIEL LOONEY, ASSISTANT
DISTRICT ATTORNEY KENNETH KUNKEN,
DETECTIVE EDWIN TRUJILLO AND
JOHN DOES 1-5,

                              Defendants.

-----------------------------------------------------------X

**COMPLAINT**

Case No:

**JURY TRIAL DEMANDED**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   SEP 17 2007   ★

LONG ISLAND OFFICE

SEYBERT, J.

WALL, M.J.

        The plaintiff, Michael Fonte, by his attorneys, Foley, Griffin, Jacobson & Faria, LLP and

Lefkowitz, Hogan & Cassell, LLP for his Complaint against the defendants alleges the

following:

## SUMMARY OF CLAIMS

        1.      This is an action for damages sustained by plaintiff Michael Fonte ("Fonte" or

"Plaintiff") for various violations of his rights under the United States and New York State

Constitutions, including but not limited, inadequate training and supervision, Brady violations,

and failure to provide equal protection under the law based upon maintaining policies and

customs intentionally, through gross negligence or deliberate indifference, resulting in the

depravation of Plaintiff's constitutional rights.

## JURISDICTION

2.      This Court has jurisdiction of this case under 42 U.S.C. § 1981 and § 1983 and the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

3.      Prior to filing the present action and within the time proscribed by statute, Plaintiff filed a Notice of Claim in compliance with General Municipal Law § 50 et seq. and CPLR 215 against each municipal defendant.  A copy of the Notice of Claim is annexed hereto as Exhibit "1."

## VENUE

4.      Venue is properly established in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as the parties reside in the District and the claims at issue arose in the District.

## PARTIES

5.      Michael Fonte ("Fonte") is at all times mentioned herein an individual who resides at 6120 Grand Central Parkway, Apt # B140B, Forest Hills New York .

6.      The County of Nassau ("Nassau County") is at all times mentioned herein a municipal corporation within the State of New York.  Nassau County employed defendants Detective Trujillo and Assistant District Attorneys Haber, Vigliotti, Looney, Kunken and John Does 1-5.

7.      The Nassau County District Attorney's Office ("Nassau DA"), is at all times mentioned herein a duly constituted office and/or agency authorized to prosecute crimes in Nassau County, State of New York.  It is alleged herein that the Nassau DA and its employees were acting under color of law within their individual and official capacities when they violated Plaintiff's rights.

2

8.     The Nassau County Police Department ("Nassau PD") is at all times mentioned herein an agency of Nassau County.  It is alleged herein that the Nassau PD and its employees were acting under color of law within their individual and official capacities when they violated Plaintiff's rights.

9.     Assistant District Attorney David Haber ("Haber") is at all times mentioned herein an Assistant District Attorney employed by Nassau County, and was acting in the furtherance of and in the scope of his employment, acting under color of law, and was acting in his individual and official capacities as an agent, servant, and employee of Nassau County.

10.     Assistant District Attorney Luigi Vigliotti ("Vigliotti") is at all times mentioned herein an Assistant District Attorney employed by Nassau County, and was acting in the furtherance of and in the scope of his employment, acting under color of law, and was acting in his individual and official capacities as an agent, servant, and employee of Nassau County.

11.     Assistant District Attorney Daniel Looney ("Looney") is at all times mentioned herein an Assistant District Attorney employed by Nassau County, and was acting in the furtherance of and in the scope of his employment, acting under color of law, and was acting in his individual and official capacities as an agent, servant, and employee of Nassau County.

12.     Assistant District Attorney Ken Kunken ("Kunken") is at all times mentioned herein an Assistant District Attorney employed by Nassau County, and was acting in the furtherance of and in the scope of his employment, acting under color of law, and was acting in his individual and official capacities as an agent, servant, and employee of the Nassau County.

13.     Detective Edwin Trujillo (hereinafter "Trujillo") is at all times mentioned herein a detective employed by Nassau County under the direction of Nassau County PD and was acting in the furtherance of and in the scope of his employment, acting under color of law, and was

acting in his individual and official capacities as an agent, servant, and employee of Nassau County.

14.    Upon information and belief, John Does 1-5 are employed by Nassau County under the direction of Nassau County and were acting in the furtherance of and in the scope of their employment, acting under color of law, and were acting in their individual and official capacities as agents, servants, and employees of Nassau County.

15.    All Defendants were acting under color of law and pursuant to their legal authority.

16.    During all times mentioned in this Complaint, Defendants were acting under color of law, to wit, acting pursuant to the constitution, statutes, ordinances, laws, rules, regulations, polices, customs and usages of the State of New York and/or Nassau County.

17.    During all times mentioned in this Complaint, Defendants separately and acting in concert with each other engaged in acts or omissions that constituted deprivation of the constitutional rights, privileges and immunities of Plaintiff and while these acts were carried out under color of law, they had no justification or excuse in law and were unlawful, improper and unrelated to any legitimate activity in which law enforcement officers and prosecutors may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

### FACTUAL ALLEGATIONS
#### Plaintiff's Arrest

18.    On November 8, 2002, Fonte was wrongfully jailed until approximately 4:00 p.m. based upon the false allegation that he assaulted an individual named Cory Lang.

19.    As discussed in more detail below, as a result of Defendants' unlawful conduct, Fonte spent more than two-and-a-half years of this life and thousands of dollars to defend

4

himself against baseless criminal charges that police and prosecutors knew or had reason to know were entirely baseless.

20.    Specifically, on the evening of November 7, 2002, Fonte and three friends went to McHebe's bar in Uniondale on Hempstead Turnpike, New York ("the Bar").  Fonte's three friends were Daniel Hovespian, Sean Dowling and Jose Pujols.

21.    Fonte's physical description in November 2002 was that of a black male, 6'2" tall, approximately 215 lbs., thin facial hair-beard, mustache, with wavy hair.

22.    Daniel Hovsepian's ("Hovsepian") physical description in November 2002 was that of a white male, 5'8" tall, approximately 160 lbs., with spiky blond hair.

23.    At the Bar on the evening of November 7, 2002, Fonte and his friends met up with another friend, James McGuinness ("McGuinness") and an individual named Tarkoff.

24.    While in the Bar, Fonte got into an argument with an individual named Caesar Bagui ("Bagui").  Bagui pushed Plaintiff, and bouncers separated them and escorted Fonte off the premises.

25.    After being removed from the Bar, Fonte walked to his car.  Shortly thereafter, at approximately 2:30 a.m. on the morning of November 8, 2002, Bagui and a group of approximately ten males approached Plaintiff and proceeded to physically assault him.

26.    Cory Lang ("Lang") then joined the large group of individuals outside the Bar that were assaulting Plaintiff.

27.    The assault of Fonte continued until McGuinness and possibly Tarkoff came to Fonte's rescue.  Plaintiff was separated from the group that was assaulting him and a shouting match ensued between Plaintiff and individuals in the group that had been assaulting him.

28.     At some point during the dispute outside the Bar, Lang was slashed in the face by a sharp object believed to be a box-cutter or "butterfly knife."

29.     During the shouting match and the apparent slashing of Lang's face, someone in the crowd yelled, "Police!"  The crowd began to disperse and Fonte got into his car and drove away from the Bar.

30.     Approximately one block from the Bar, Fonte was stopped by Hempstead Police Officer Eugene Este ("Este").  Este "asked" Fonte to return to the scene of the aforementioned disturbance outside the Bar.

31.     When Fonte returned to the Bar, he observed the police placing Hovsepian under arrest.

32.     Shortly thereafter, Fonte was arrested and placed in the back of a Hempstead Village police car with Hovsepian.

33.     They were driven to the hospital, Island Medical Center on Front Street in Hempstead, where the police conducted an identification procedure known as a "show up" with assault victim Lang.

34.     Police Officer Murphy and Police Officer Este of the Hempstead Police Department conducted the show-up outside the hospital.  At the time of the "show up," Fonte and Hovspian were seated next to one another in the back of the police car when the Hempstead Police Officers directed Lang to look into the rear of the police car with the aid of a flashlight. At that time, Fonte noticed that the flash light was only focused on him and not on Hovsepian.

35.     Upon information and belief, Lang identified Plaintiff as the person who assaulted him.

6

36. Shortly thereafter, Plaintiff and Hovsepian were taken to the Hempstead Police Department.

37. At the Hempstead Police Department, Plaintiff was questioned and his injuries from the beating he sustained outside the Bar were photographed by Detective Trujillo of the Nassau County PD.

## The Prosecution of Plaintiff

38. Fonte was subsequently processed for arrest and brought to arraignment in Nassau County District Court on November 9, 2002  He was charged with Assault in the Second Degree in violation of New York State Penal Law § 120.05 and Criminal Possession of a Weapon in violation of Penal Law § 265.01 (the "Charges").

39. At Plaintiff's arraignment on November 9, 2002, a bail bond was set in the amount of ten thousand ($10,000.00) dollars.  Fonte posted bail later that day.

40. At the time Fonte was arrested outside the Bar, many individuals were present who were witnesses to both the attack on Fonte, as well as the slashing of Lang's face.

41. The investigation of the incident outside the Bar was conducted by Detective Edwin Trujillo, lead detective of the Nassau County PD and the Hempstead Police Department.

42. On the night of the incident, Officer Bornstein of the Hempstead Police Department took a statement from Lang, wherein he claimed he was cut by someone with "curly hair."

43. On November 9, 2002, Detective Trujillo interviewed, at the Hempstead Police Department, Mr. Robert Verderosa, Jr. ("Verderosa"), the owner of the Bar.  Verderosa informed police that he observed a disturbance on the street outside his Bar.  He further stated that he witnessed Hovsepian arm himself with a large butterfly knife and wave into the crowd.

Verderosa identified Hovsepian at the scene and told the police that Hovsepian was the only person he observed with a knife.

44.     On November 9, 2002 at 6:00 p.m., the police obtained a written statement from Mr. Benjamin Block ("Block"). Block identified himself as a friend of Bangui's and told police that he was with Bagui the night before at the Bar. Block stated that Plaintiff did not hit Lang or posses any weapon, nor did he slash the victim. He stated that Fonte was never closer than four feet from Lang. He further stated he observed a light skinned guy standing close to Lang and then saw Lang reel back and start bleeding right away.

45.     As discussed below, despite having been served with a demand for the production of any and all exculpatory evidence, Block's statement was not provided to Plaintiff's criminal defense attorney until August 30, 2004, which was the day the case was set for jury selection.

46.     Two weeks after the incident at the Bar, Lang contacted Trujillo and met with him at the Third Precinct in Williston Park. At that meeting, Lang told Trujillo that he had severe reservations about his identification of Fonte as the assailant. Trujillo showed Lang his written statement of identification as well as the sole arrest photo of Fonte. After both of the above occurred, Lang still indicated he had reservations about his identification of Fonte.

47.     On June 5, 2003, Trujillo conducted a line-up at the Third Precinct in Williston Park. Fonte was placed in the line-up along with five fillers. Present at the line-up were Fonte's initial criminal attorney, Steven J. Gaitman, and Assistant District Attorney David Haber.

48.     Shane Zwirman ("Zwirman") a fraternity brother of Lang was asked to view the line-up. Zwirman was a witness to the occurrences at the Bar on the morning of November 8, 2002 and was present when Lang was slashed.

49.     Zwirman was unable to identify Fonte at the line-up.

8

50. Also at the line-up on June 5, 2003, Assistant District Attorney David Haber told Fonte that he did not think Fonte was the "cutter." Haber told Fonte that if he gave a written statement incriminating Hovsepian, the case against him would be dismissed. Fonte told Haber that he could not give such a statement because did not see who cut Lang.

51. The criminal case against Plaintiff was presented to a Nassau County Grand Jury in July 2003. Upon information and belief, prior to testifying at the Grand Jury, witness Zwirman met with Haber and Detective Trujillo. During this meeting, Zwirman asked to see a still photograph of the line-up he had personally observed weeks earlier when he could not identify Fonte.

52. Zwirman was then shown the single arrest photo of Fonte. Upon being shown this single arrest photo of Fonte, Zwirman told Haber that "that guy was not the cutter, he was yelling a lot, but did not do the cutting."

53. Upon information and belief, Zwirman's statement was not presented to the Grand Jury in July 2003.

54. At the July 2003 Grand Jury, McGuinness testified at Fonte's request.

55. Upon information and belief, McGuiness testified that he observed Fonte being removed from the Bar by bouncers and then being assaulted in the street by a group of individuals.

56. McGuinness testified that he came to the aid of Fonte and that he never saw Fonte assault anyone with a weapon outside the Bar.

57. Verdersosa, who, as noted above, was the owner of the Bar, also testified at the Grand Jury at the request of Fonte.

58. Based upon information and belief, Verdersosa testified that he observed a white

9

kid, with scruff on his face, about five feet seven or eight inches tall, remove a butterfly knife from the trunk of a small dark car parked outside the Bar. He saw this person lunge around a stocky dark male who was arguing with another kid and slash him with a butterfly knife.

59. The grand jury indicted Fonte for two counts of Assault in the Second Degree in violation of New York State Penal Law § 120.05(2) and § 120.05(4), one count of Assault in the Third Degree § 120.00(2) and One count of Criminal Possession of a Weapon in the Fourth Degree in violation of Penal Law § 265.01(2).

60. In the spring of 2004, pre-trial hearings were held. Este and Wilson from the Hempstead Police Department testified, as well as Detective Trujillo. The hearings were held regarding the pre-trial identification procedure of Plaintiff at the hospital, the probable cause for Plaintiff's arrest, the line-up in June 2003 and the voluntariness of the statements allegedly made by Plaintiff to the police. The hearings were held before Judge Ort between February 18, 2004and April 7, 2004.

61. Detective Trujillo testified that no identification procedure was conducted regarding the information obtained from Verderosa. In fact, no identification procedure was ever undertaken regarding the conduct of Hovsepian, despite the fact that on the morning of November 8, 2002, Hovsepian was held by the police at the Hempstead Police Department for several hours. There was no follow up with Verderosa or anyone else.

62. In August of 2004, on the date of the jury selection for Fonte's trial, Fonte's attorney, William J. Kephart, was provided, for the first time, with the exculpatory statement from Block.

63. Mr. Kephart then met with Deputy Bureau Chief Ken Kunken regarding the People's failure to disclose the "Brady" material, namely Block's statement.

64.    At this meeting, Mr. Kephart requested that the Nassau District Attorneys Office consent to re-presenting the case against Fonte to the Grand Jury. The Nassau District Attorney declined Mr. Kephart's request.

65.    Mr. Kephart, pursuant to the court's recommendation to do so, then filed a motion based upon the People's failure to disclose exculpatory evidence. The District Attorney's Office eventually agreed to re-present the case to the Grand Jury.

66.    At the second Grand Jury, the Grand Jury was told of the following exculpatory evidence: Block's statement, Verderosa's testimony, the testimony of Gonzalez (manager of the Bar who confirmed Verderosa's version of events) and Lang's statement to Trujillo two weeks after the alleged assault.

67.    After the exculpatory evidence was presented to the second Grand Jury, all pending Charges against the Fonte were dismissed.

68.    Undeterred, the Nassau DA Office then requested and obtained an indictment against Fonte for Hindering Prosecution, a misdemeanor, based on Fonte driving Hovsepian from the Bar on the night of the incident, even though Hovsepian was never charged with any criminal offense and even though Plaintiff did not drive Hovsepian.

69.    Fonte's attorney filed a motion to dismiss the Hindering charge for legal insufficiency. The Nassau DA opposed the motion. On June 16, 2005, the Hindering charge was dismissed by the court as legally insufficient.

70.    No further proceedings were brought against Plaintiff.

71.    Upon information and belief, Defendants' withholding of "Brady" information from Plaintiff was not an aberration. Rather, it was the policy and the practice of the Nassau DA to withhold "Brady" information from criminal defendants. It was also the policy of the Nassau

11

DA to improperly pressure defendants to accept plea bargains in exchange for an opportunity to avoid the prospect of incarceration.  And, when it becomes clear that there is a problem or weakness with a case, the DA's office engages in the practice of offering a reduced plea rather than properly providing  "Brady." information or dismissing the case.

72.    Further, upon information and belief, it was the policy and custom of the supervisors in the Nassau DA's office to participate in said constitutional violations and/or to fail to supervise and discipline assistant district attorney's engaged in constitutional violations.

73.    The herein above described actions and omissions, engaged in under color of state authority by Defendants, including defendant Nassau County, sued as a person because of its authorization, condoning and ratification thereof for the acts of its agents, deprived Plaintiff of rights secured to him by the Constitution of the United States under 42 U.S.C. § 1981 and § 1983, including, but not limited to, his Fourth Amendment right to be free from unlawful search and seizure of his person, his Fourteenth Amendment right to due process of law, and his Fifth Amendment right to equal protection under the law.  Defendants' actions also demonstrate a pattern and practice constituting a policy aimed at the deprivation of constitutional rights against criminal suspects and criminal defendants in Nassau County.

## AS AND FOR A FIRST COUNT
### 42 U.S.C. § 1983 – Deprivation of Civil Rights

74.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 73 of this Complaint with the same force and effect as though fully set forth herein.

75.    The unlawful prosecution, and other wrongful acts conducted against Plaintiff by Defendants were committed under color of law, customs, and statutes of the Nassau County, the

State of New York and the United States of America and the Constitution of the State of New York and the United States of America.

76.     Under color of law, Defendants deprived Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, Equal Protection and Due Process, by continuing to prosecute Plaintiff for criminal charges after they knew that there was evidence that revealed that Fonte was not responsible for the Charges asserted against him and that there was not basis in fact or law to charge Fonte with hindering prosecution.

77.     Specifically, the wrongful acts committed against Plaintiff by Defendants, included, but were not limited to: a) charging Fonte, without probable cause, of crimes he did not commit; b) continuing to prosecute Fonte after it was evident that he was innocent of the Charges; c) attempting to coerce Fonte into pleading guilty to a crime that he did not commit; d) attempting to coerce Fonte into giving a false statement to the police in exchange for dismissal of the Charges; e) failing to provide Brady material to Fonte; and f) charging Fonte with hindering a prosecution when there was no prosecution to even hinder.  Such actions were negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject citizens to baseless and prolonged criminal prosecution.

78.     The wrongful acts were consistent with and performed pursuant to a municipal policy or custom.

79.     Fonte received a favorable termination inasmuch as at the Second Grand Jury the Charges were dismissed.  Likewise, the Hindering charge was dismissed by the Court.

80.     The wrongful actions were committed by Defendants with malice in an attempt to cover up the discriminatory treatment of Fonte by Defendants.

13

81.     The violation of Fonte's rights was committed by Defendants in their official and individual capacities, in their refusal to adequately investigate and properly review the charges against Fonte.

82.     That by reason of the foregoing, Plaintiff has been damaged in the sum of Ten million dollars ($10,000,000.00).

### AS AND FOR A SECOND COUNT
### 42 U.S.C. § 1983 – Violation of 42 U.S.C. § 1981

83.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 82 of this Complaint with the same force and effect as though fully set forth herein.

84.     The unlawful prosecution, and other wrongful acts committed against Plaintiff by Defendants were committed under color of law, customs, statutes of Nassau County, the State of New York and the United States of America and the Constitution of the State of New York and the United States of America.

85.     Under color of law, Defendants deprived Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, Equal Protection and Due Process.

86.     Said acts were committed against Fonte because he is a minority, an African-American.

87.     The violation of Fonte's rights was committed by Defendants in their official and individual capacities.

88.     That by reason of the foregoing, Plaintiff has been damaged in the sum of Ten million dollars ($10,000,000.00).

## AS AND FOR A THIRD COUNT
## 42 U.S.C. § 1983 – Municipal Liability

89.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 88 of this Complaint with the same force and effect as though fully set forth herein.

90.     Nassau County, the Nassau PD and the Nassau DA have permitted, developed, maintained, tolerated and encouraged a pattern of unjustified, unreasonable and illegal abuses and arrests of minorities by police officers of the Nassau County, and the wrongful detention of the same. Such wrongful conducted against Plaintiff and others were committed under color of law, customs, and statutes of the County of Nassau, the State of New York and the United States of America and the Constitution of the State of New York and the United States of America.

91.     Although such conduct is improper, said incidents were covered up by Defendants by official claims that the continued prosecution of persons arrested is justified and proper, or by leveling false charges against the persons so falsely charged, so as to insulate the offending police officer and other officials. Said charges and official claims have been fully backed by Defendants, who have repeatedly and unreasonably sided with the abuse of persons so affected in nearly all cases, despite vast evidence of wrongdoing by these officers against minority persons, including Fonte.

92.     Additionally, Defendants systematically failed to identify the improper abuse, misuse, violative acts and abuse by police officers and officials, while further failing to subject such officers and officials to discipline, closer supervision or restraint.

93.     Upon information and belief, it was the policy and custom for supervisors to participate in said constitutional violations. Nassau County has failed to train, supervise and discipline police officers and district attorneys, including the police officers and assistant district

15

attorneys named in this action, thereby failing to discourage constitutional violations on the part of the officers and the district attorneys.

94.    Said cover-up by Defendants was executed in this case, where Defendants committed wrongful acts against Plaintiff, including, but not limited to:   a) charging Fonte, without probable cause, of crimes he did not commit; b) continuing to prosecute Fonte after it was evident that he was innocent of the Charges; c) attempting to coerce Fonte into pleading guilty to a crime that he did not commit; d) attempting to coerce Fonte into giving a false statement to the police in exchange for dismissal of the Charges; e) failing to provide Brady material to Fonte; and f) charging Fonte with hindering a prosecution when there was no prosecution to even hinder.

95.    As a direct and proximate result of aforesaid acts, omissions, systematic flaws, policies and customs of Nassau County, Nassau PD and Nassau DA, Plaintiff has been injured.

96.    That by reason of the foregoing, Plaintiff has been damaged in the sum of ten million dollars ($10,000,000.00).

### AS AND FOR A FOURTH COUNT
### 42 U.S.C. § 1985 - Conspiracy

97.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 96 of this Complaint with the same force and effect as though fully set forth herein.

98.    The unlawful prosecution, and other wrongful acts committed against Plaintiff by Defendants were committed under color of law, customs, statutes of Nassau County, the State of New York and the United States of America and the Constitution of the State of New York and the United States of America.

99.     Under color of law, Defendants deprived Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, Equal Protection and Due Process, by entering into a conspiracy designed to deny, injure, oppress, threaten, trick and/or deceive Plaintiff.

100.    Specifically, Defendants, in concert with one another, committed wrongful acts against Plaintiff, including, but not limited to:  a) charging Fonte, without probable cause, of crimes he did not commit; b) continuing to prosecute Fonte after it was evident that he was innocent of the Charges; c) attempting to coerce Fonte into pleading guilty to a crime that he did not commit; d) attempting to coerce Fonte into giving a false statement to the police in exchange for dismissal of the Charges; e) failing to provide Brady material to Fonte; and f) charging Fonte with hindering a prosecution when there was no prosecution to even hinder.  Such actions were negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject citizens to baseless and prolonged criminal prosecution.

101.    The wrongful actions were committed by Defendants as part of a conspiracy designed to cover up the discriminatory treatment of Fonte by Defendants.

102.    The violation of Fonte's rights was committed by Defendants in their official and individual capacities.

103.    That by reason of the foregoing, Plaintiff has been damaged in the sum of Ten million dollars ($10,000,000.00).

**AS AND FOR A FIFTH COUNT**
**42 U.S.C. § 1986 – Neglect to Prevent Conspiracy**

104.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 103 of this Complaint with the same force and effect as though fully set forth herein.

105.    The unlawful prosecution, and other wrongful acts committed against Plaintiff by Defendants were committed under color of law, customs, statutes of Nassau County, the State of New York and the United States of America and the Constitution of the State of New York and the United States of America.

106.    Under color of law, Defendants deprived Plaintiff of his Fourth, Fifth, and Fourteenth Amendment rights to protection from unlawful search and seizure, Equal Protection and Due Process, by entering into a conspiracy designed to deny, injure, oppress, threaten, trick and/or deceive the Plaintiff.

107.    Specifically, Defendants, in concert with one another, committed wrongful acts against Plaintiff, including, but not limited to:   a) charging Fonte, without probable cause, of crimes he did not commit; b) continuing to prosecute Fonte after it was evident that he was innocent of the Charges; c) attempting to coerce Fonte into pleading guilty to a crime that he did not commit; d) attempting to coerce Fonte into giving a false statement to the police in exchange for dismissal of the Charges; e) failing to provide Brady material to Fonte; and f) charging Fonte with hindering a prosecution when there was no prosecution to even hinder.  Such actions were negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject citizens to baseless and prolonged criminal prosecution.

108.    Each of the said Defendants knew of the wrongful acts committed or about to be committed against Plaintiff and with reasonable diligence could have prevented the wrongful acts from being committed.

109.    Each of the said Defendants had the authority, ability and concurrent duty under 42 U.S.C. § 1986 to prevent the violations from occurring but failed to intervene to protect or to aid Plaintiff when such violations did in fact occur.

18

110.   Defendants' failure to stop these wrongful actions constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

111.   That by reason of the foregoing, Plaintiff has been damaged in the sum of Ten million dollars ($10,000,000.00).

### AS AND FOR A SIXTH COUNT
### PUNITIVE DAMAGES

112.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 111 of this Complaint with the same force and effect as though fully set forth herein.

113.   The acts of Defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiff without regard for Plaintiff's well being and were based on a lack of concern and ill-will towards Plaintiff.  Such acts therefore deserve an award of ten million dollars ($10,000,000.00) as punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants:

A.   On the First Count in the sum of ten million dollars ($10,000,000.00).

B.   On the Second Count in the sum of ten million dollars ($10,000,000.00).

C.   On the Third Count in the sum of ten million dollars ($10,000,000.00).

D.   On the Fourth Count in the sum of ten million dollars ($10,000,000.00).

E.   On the Fifth Count in the sum of ten million dollars ($10,000,000.00).

F.   On the Sixth Count in the sum of ten million dollars ($10,000,000.00).

G.   Declaratory Judgment that Defendants willfully violated Plaintiff's rights secured by federal and state law as alleged herein;

H.   Injunctive relief, requiring Defendants to correct all past violations of federal and state law as alleged herein; to enjoin Defendants from continuing to violate federal and state law

as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

   I.  An order granting such other legal and equitable relief as the Court deems just and proper.

   J.  Award costs of this action including attorney's fees to Plaintiff pursuant to 42 U.S.C. § 1988, and

   K.  Plaintiff demands a jury trial on all claims asserted herein.

Dated: Garden City, New York
    September 14, 2007

          FOLEY, GRIFFIN, JACOBSON
          & FARIA, L.L.P.
          Attorneys for Plaintiff

          By:_____
           THOMAS J. FOLEY (TF 3122)
           666 Old Country Road, Suite 305
           Garden City, New York
           (516) 741-9171

Dated: Garden City, New York
    September 14, 2007

          LEFKOWITZ, HOGAN & CASSELL, LLP
          Attorneys for Plaintiff

          By:_____
           Michael D. Cassell (MC 0236)
           350 Jericho Turnpike, Suite 100
           Jericho, New York
           (516) 942-9400

Exhibit 1

EXHIBIT 1

NOTICE OF CLAIM

------------------------------------------

In the Matter of the Claim of

MICHAEL D. FONTE,
Claimant,

-against-

THE INCORPORATED VILLAGE OF HEMPSTEAD,
HEMPSTEAD POLICE DEPARTMENT,
HEMPSTEAD POLICE OFFICER EUGENE ESTE - SHIELD NO. 147,
HEMPSTEAD POLICE OFFICER WILSON - SHIELD NO. 156,
HEMPSTEAD POLICE OFFICER MURPHY - SHIELD NO. 66,
HEMPSTEAD POLICE OFFICER BORNSTEIN - SHIELD NO. 159,
THE COUNTY OF NASSAU,
THE NASSAU COUNTY POLICE DEPARTMENT,
NASSAU COUNTY POLICE OFFICER EDWIN TRUJILLO - SHIELD NO. 6614,
NASSAU COUNTY DISTRICT ATTORNEY DENIS DILLON,
THE NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE,
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY DAVID HABER,
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY LUIGI VIGLIOTTI,
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY MINDY PLATKIN,
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY KENNETH KUNKEN and
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY DANIEL LOONEY,

Respondents

------------------------------------------

TO RESPONDENTS:

THE INCORPORATED VILLAGE OF HEMPSTEAD
99 Nichols Court
Hempstead, NY 11550

HEMPSTEAD POLICE DEPARTMENT
HEMPSTEAD POLICE OFFICER EUGENE ESTE - SHIELD NO. 147
HEMPSTEAD POLICE OFFICER WILSON - SHIELD NO. 156
HEMPSTEAD POLICE OFFICER MURPHY - SHIELD NO. 66
HEMPSTEAD POLICE OFFICER BORNSTEIN - SHIELD NO. 159
99 Nichols Court
Hempstead, NY 11550

THE COUNTY OF NASSAU
1 West Street
Mineola, New York 11501

COPY RECEIVED THIS *13th*
DAY OF *September* 20*05*
COUNTY ATTORNEY, NASSAU COUNTY
BY *Arlene Gosset*

THE NASSAU COUNTY POLICE DEPARTMENT
NASSAU COUNTY POLICE OFFICER EDWIN TRUJILLO - SHIELD NO. 6614
1490 Franklin Avenue
Mineola, NY 11501

NASSAU COUNTY DISTRICT ATTORNEY DENIS DILLON
THE NASSAU COUNTY DISTRICT ATTORNEY'S OFFICE
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY DAVID HABER
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY LUIGI VIGLIOTTI
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY MINDY PLATKIN
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY KENNETH KUNKEN
NASSAU COUNTY ASSISTANT DISTRICT ATTORNEY DANIEL LOONEY
262 Old Country Road
Mineola, NY 11501


PLEASE TAKE NOTICE that the undersigned claimant hereby makes claim and demand against the respondents, as follows:

1.      The name and post-office address of the claimant and the claimant's attorney is:

Jay D. Jacobson, Esq.                   Michael Fonte
Attorney for Claimant                   Claimant
1205 Franklin Avenue, Ste 390           6120 Grand Central Parkway, Apt. B1408
Garden City, NY 11530                   Forest Hills, NY 11375
(516) 741-1110


2.      The nature of the claim:  Action against the respondents to recover on behalf of the claimant for the following acts and omissions: for malicious prosecution, in that the respondents commenced and continued to prosecute the claimant for crimes that he did not commit, in the absence of probable cause and with actual malice; for false arrest and false imprisonment, in that the respondents intended to confine the claimant without privilege, that the claimant was aware of his confinement and did not consent to said confinement; for denying the claimant his protection under the Fourteenth Amendment of the Constitution of the United States, which provides that no state shall deprive any person of life, liberty, or property, without due process of law nor deny to any person within its jurisdiction the equal protection of the laws, and that the respondents actions and conduct were under the color of New York State law; for depriving the claimant of his rights protected by the Constitution of the United States, and that the respondents actions and conduct caused damage to the claimant; for violating the claimant's rights and privileges secured to him under the Constitutions and laws of the United States of America and the State of New York; for selectively reporting misleading information and intentionally withholding material and relevant exculpatory information; for recklessly and/or gross negligently disregarding the claimant's rights, which were manifested in the respondents egregious deviation from proper investigative procedures and/ or by initiation of the prosecution notwithstanding the total absence of probable cause; for creating, overlooking and

participating in a constitutionally offensive policies and/or customs, which caused injury to the claimant; for respondents pattern of ignoring law enforcement improprieties and misconduct; for failing to train and supervise Assistant District Attorneys regarding Brady and other legal obligations; for creating and causing a policy and/or custom to conceal exculpatory evidence and commit other wrongs in order to secure convictions; for frequently causing others similarly situated as the claimant to be the deprived of their constitutional rights; for numerous and egregious managerial inadequacies that manifested deliberate indifference to the federal constitutional rights of persons with whom the respondents arrested and/or prosecuted; for causing and creating certain policies that had the effect of depriving a criminal suspect of his or her constitutional rights; for failure to chose other alternatives that would secure criminal suspects of their constitutional rights; for their failure to fully train their employees; for their repeated failure to make any meaningful investigation into charges that their police officers, assistant district attorneys and/or other employees were violating citizens' constitutional rights; for their failure to have adequate policies concerning disclosure of exculpatory material, correction of misleading testimony, and seeking of vacatur of indictments and/or convictions based on false and misleading information; for their knowledge of and their failure to address the fact that there were numerous other reversals and/or dismissals for Brady violations by the respondents prior to the indictment of and dismissal of the charges against the claimant; for their failure to address the fact that the police officers assigned to the investigation of the claimant had a history of constitutional violations and their refusal to correct said violations or dismiss said employees with full knowledge that the same violations would occur again; for their failure to act upon their actual notice of their employees violation of criminal suspects civil rights on a continuous basis for a number of years before the arrest of the claimant; for their failure to use such care in the performance of police duties as reasonably prudent and careful police officers would have used under similar circumstances; for recklessly and negligently hiring and retaining police officers, including the police officers named herein, who were unfit to serve as police officers and/or detectives; for their failure to exercise precautions in employing said police officers and/or detectives by failing to properly investigate their backgrounds; for their continuing employment of police officers and/or detectives who the respondents knew continuously violated suspects civil rights; for their failure to properly train and instruct said police officers; for their failure to exercise care in instructing their employees as to their deportment, behavior and conduct as police officers and representatives of the respondents, more specifically with regard to their training as to probable cause to arrest and imprisonment.

3.      The time when, the place where, and the manner in which the claim arose: That on November 8, 2002, at approximately 2:30 a.m. at the corner of Fulton Avenue and Kernochan Avenue in the Village of Hempstead, County of Nassau and State of New York, there was an incident involving the claimant, Michael Fonte, and other persons, all males. That the claimant Michael Fonte was assaulted and battered by several males at that place and time. That at or about that time and place, non-respondent, Cory Lang, was assaulted with a sharp instrument and suffered injury. [Hereinafter the above will be referred to as "the underlying incident"). Thereafter, the respondent police officers arrested the claimant, Michael Fonte, and charged him with various crimes relating to the underlying incident. The respondent prosecutors pursued the criminal charges against the Claimant. On June 16, 2005, all criminal charges leveled against the claimant stemming from the underlying incident were dismissed by the Court.

That on and after November 8, 2002, through June 16, 2005, the respondents, their servants, agents and/or employees maliciously, intentionally, recklessly and/or negligently committed, or failed to perform, the following acts: conduct a complete and proper investigation surrounding the underlying incident; interview, or properly interview, witnesses to the underlying incident, including (but not limited to) Cory Lang, Daniel Hovsepian, Jose Pujol, Cesar Bagui, James McGuinness, Benjamin Block, Shane Zwirman, Robert Verderosa, Jr., and Marty Gonzalez; steering sworn statements to implicate the claimant in criminal conduct; in attempting to coerce the claimant into making statements regarding self-defense, which, if made, were to be used to self-incriminate the claimant; in failing to advise the claimant of his rights; refusing to place in sworn statements exculpating information; in refusing to take written statements that would exculpate the claimant; in placing the claimant in the back of a patrol car handcuffed for identification; performing a "show-up" identification while the claimant was seated handcuffed in a patrol car; in conducting an improper "show-up" or "line-up" identification; in conducting a criminal identification of the claimant while Cory Lang was under medical care, in a state of shock, under the influence of drugs prescribed by his treating health care providers and/or the influence of alcohol; releasing the true assailant Daniel Hovsepian from custody when the evidence accumulated by the respondents indicated that he was the perpetrator of the crimes that the claimant was being accused of; in intentionally pursuing criminal charges and steering evidence against the claimant based upon his skin color and ethnicity; in failing to follow-up with leads and pursue evidence readily available to the respondents that indicated that Daniel Hovsepian was the perpetrator of the crimes that the claimant was being investigated for; in processing the claimant when there was evidence available that the claimant was not the perpetrator of any crime; processing the claimant; arraigning the claimant in Nassau County District Court November 8, 2002, and charging him, via a felony complaint, with Assault in the 2nd degree and Criminal Possession of a Weapon in the 4th Fourth Degree; in withholding evidence, which would exculpate the claimant, including but not limited to his clothing from the underlying incident; in failing to take a written statement from, properly interview, and/or refusing to interview, Robert Verderosa, Jr., who had exculpatory information regarding the claimant; taking statements of witnesses, including but not limited to that of Benjamin Block on November 9, 2002, which exonerated the claimant from the charged crime and failing, refusing and/or concealing the statement until August 30, 2004; in concealing the recantation of victim Cory Lang; in refusing to take a statement regarding the recanting of Cory Lang; in discouraging the victim Cory Lang from recanting his statement regarding the involvement of the claimant in the underlying incident; in failing to conduct a further investigation after the recanting of the victim Cory Lang; in failing to place Daniel Hovsepian in a line-up or photo pack identification; in failing to exchange or disclose the exculpatory information to the claimant and his counsel during the course of the prosecution; in conducting an improper line-up in June of 2003; in attempting to coerce the claimant in making statements against Daniel Hovsepian, whom the respondents knew or should have know was the true culprit, and punishing the claimant when he refused to do so with a continued prosecution for crimes he did not commit; in proceeding with a Grand Jury without the disclosure, exchange, or presentment of exculpatory information; in failing to disclose that witness Zwirman eventually made exculpating statements about the claimant; in failing to present Benjamin Block to the Grand Jury; in concealing statements taken by and documentation produced by pre-trial hearing testifying witnesses, respondents Police Officers Este, Wilson, and Trujillo; in failing to interview and take a statement from witness Marty Gonzalez; in violating the claimant's right to due process; in violating the claimant's right to a fair presentment of the evidence in the Grand Jury stage of the prosecution; in

denying the claimant a meaningful right to testify on his own behalf and to present a defense based upon the exculpatory information that existed at the time of the Grand Jury presentment; in failing to join, and then delaying joinder with, the claimant's criminal defense counsel in his motion to dismiss the indictment and represent the case to the Grand Jury with all of the exculpatory information being presented; in presenting to the Grand Jury the further charge, which was not supported by any evidence or information, of Hindering Prosecution; in prosecuting the charge of Hindering Prosecution after indictment when the respondents knew, or should have known, there was no evidence or information to support; in presenting and prosecuting the charge of Hindering Prosecution in retribution for the claimant's refusal to make statements against Daniel Hovsepian for the underlying incident; in opposing the claimant's criminal defendant's motion to dismiss the indictment for legal insufficiency without any support in evidence and law with the sole purpose to punish the claimant for his refusal to make statements against Daniel Hovsepian; in attempting to coerce the claimant into making statements against Daniel Hovsepian; and in arresting the claimant based upon his skin color and ethnicity.

4.     The items of damage or injuries claimed are (include dollar amounts): As a result of the respondents acts and omissions, the claimant was indicted on Assault in the Second and Third degree, Criminal Possession of a Weapon in the Fourth Degree and Hindering Prosecution; that the claimant was prosecuted for crimes that he did commit from November 8, 2002 through June 16, 2005; that the claimant lost employment and employment opportunities; that the claimant expended monies on legal fees and other related expenses; that the claimant suffered severe emotional duress, stress and trauma; that the claimant missed education and educational opportunities; that the claimant was subjected to ridicule and embarrassment; that the claimant suffered violations of his Civil Rights as guaranteed to him under 42 U.S.C. Sec. 1983; and the claimant is entitled to recover attorneys' fees pursuant to 42 U.S.C. Sec. 1988; and that by reason of the aforesaid, claimant has been damaged in the sum of FIVE MILLION ($5,000,000.00) DOLLARS.

TOTAL AMOUNT CLAIMED FIVE MILLION DOLLARS ($5,000,000.00)

The undersigned claimant presents this claim for adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the claimant intends to commence on action on this claim.

Dated: September *13*, 2005
Forest Hills, New York

Claimant: Michael Fonte
6120 Grand Central Parkway, Apt. B1408
Forest Hills, NY 11375

Jay D. Jacobson, Esq.
Attorney for the Claimant
1205 Franklin Avenue, Suite 390
Garden City, NY 11530
(516) 741-1110

State of New York      )
                                      ss.:
County of Queens      )

     Michael Fonte, being duly sworn, deposes and says that deponent is the claimant in the within action; that she has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to the deponent's own knowledge, except as to the matters therein stated to alleged on information and belief, and that as to those matters deponent believes it to be true.

Michael Fonte

Sworn to before me on
September *12*, 2005

NOTARY PUBLIC

HENRY T. BAK
Notary Public, State of New York
No. 01BA4669544
Qualified in Queens County
Commission Expires July 31, 1998
2006